SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. BOCKELMAN, OSB #105934**
Assistant United States Attorney
Nicole.Bockelman @usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**JOSHUA KANE BRITTON,**

**Defendant.**

**3:17-cr-00307-AN**

**GOVERNMENT'S SUPERVISED RELEASE VIOLATION MEMORANDUM**

## INTRODUCTION

This Court will conduct a supervised release violation hearing on Wednesday, September 23, 2026 at 2:30 p.m.

The sole allegation of the United States Probation Office (USPO) is:

(1) Violation of Mandatory Condition #1: You must not commit another federal, state or local crime. (Grade C Violation).

/ / / /

/ / / /

USPO has advised the Court that it believes that this allegation, if found by the Court, is a Grade C violation, and provides for a possible sentencing range of 8-14 months' imprisonment.

At the Supervised Release Hearing scheduled on September 15, 2026, defense counsel provided the "Defendant's Memorandum on Admissibility of Hearsay Statements of an Absent Declarant".

This Government memorandum will discuss the allegation in the USPO Petition, provide legal standards that will apply to the hearing, and further discuss the evidence the Court will hear.

## DISCUSSION

### I. Legal Standards

Federal Rules of Evidence do not strictly apply to supervised release revocation hearings. *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) (citing *United States v. Walker*, 117 F.3d 417, 421 (9th Cir.1997)). The Ninth Circuit has held that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not extend the Sixth Amendment right to confrontation to revocation of supervised release proceedings. *Hall*, 419 F.3d at 985.

The Supreme Court held parole revocations are "not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Rather, *Morrissey* instructed, "a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights." *Morrissey*, 408 U.S. at 482.

Defendant, thus, has a due process right to confront witnesses against him during his supervised release proceedings. *Hall*, 419 F.3d at 986 (citing *Morrissey* and *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir.1999)). *Comito* announced a balancing test to determine "whether the admission of hearsay evidence violates the [defendant's] right to confrontation in a particular case, [instructing] the court must weigh the [defendant's] interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." *Comito*, 177 F.3d at 1170. *Comito* further instructed: "The weight to be given the right to confrontation ... depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." *Id.* at 1171.

As part of the balancing test, *Hall* prescribed some analysis of the nature of the evidence to be proven by hearsay. 419 F.3d at 987-88. Although "[u]nsworn verbal allegations" are "in general, the least reliable type of hearsay," such statements can be evaluated for indicia of reliability, such as corroboration by non-hearsay evidence. *Id.* at 987 (quoting *Comito*, 177 F.3d at 1171). *Hall*'s prescription for evaluating good cause for not calling a declarant stated, "[W]e look to 'both the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence.'" *Hall*, 419 F.3d at 988 (quoting *United States v. Martin*, 984 F.2d 308, 311, 312 (9th Cir.1993).

**Applicable Oregon Revised Statutes**

**Harassment:** Or. Rev. Statute § 166.065 states in pertinent part: "A person commits the crime of harassment if the person intentionally: (a)harasses or annoys another person by: (A) subjecting such other person to offensive physical contact; or (B) publicly insulting such other

person by abusive words or gestures in a manner intended and likely to provoke a violent response.

**Disorderly Conduct**: Or. Rev. Statute § 166.025 states in pertinent part: "A person commits the crime of disorderly conduct in the second degree if, with intent to cause a public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person: (a) engages in fighting or in violent, tumultuous or threatening behavior.

**Criminal Trespass in the Second Degree**: Or. Rev. Statute § 164.245 states in pertinent part: "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or upon premises".

**Menacing**: Or. Rev. Statute § 163.190 states in pertinent part: "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury".

**Assault in the Fourth Degree**: Or. Revised Statute § 163.160 states in pertinent part: "A person commits the crime of assault in the fourth degree if the person (a) intentionally, knowingly or recklessly causes physical injury to another.

## II. Discussion

a. *Violation of Mandatory Condition #1: commission of a new crime.*

The government expects to present evidence that Adult Victim 1 (AV1), a 34-year-old female, called 911 during the early morning hours of April 11, 2026. AV1 called for help after her ex-boyfriend, defendant, refused to leave her home, pounded on her front door and tried to pry her garage open.

When Portland Police Bureau Jarl Moreland responded to AV1's house at approximately 3:00 a.m., Officer Moreland saw defendant's running vehicle parked in AV1's driveway. As

Officer Moreland approached the scene in his patrol car, he watched as defendant's vehicle drove directly at him. Officer Moreland got out of his patrol car to challenge defendant at gunpoint and order him out of the vehicle.

Defendant complied with Officer Moreland's orders and once defendant was restrained, Officer Moreland walked toward AV1's home to speak with AV1. As Officer Moreland walked to AV1's front door, he saw that AV1's garage door had been opened 5-6 inches. Officer Moreland knocked on AV1's front door, and heard the sound of furniture moving away from the door before it was opened. AV1 answered the door and spoke with Officer Moreland.

AV1 explained that her ex-boyfriend, the defendant, was at her house that morning around 1 a.m., and was pounding on her front door, demanding entry. AV1 said that she told defendant to leave her house, but that defendant refused to leave and told her that he had a key to her house and would take her car and items from the house that defendant said belonged to him. AV1 said that when defendant refused to leave her home after she told him to leave multiple times, she called 911. AV1 explained that after she called 911 the first time, defendant tried to pry the garage door open. AV1 described defendant as controlling and assaultive.

AV1 stated that three days prior, on April 8, 2026, defendant tried to slap her, but she blocked his slap and dropped her phone. Defendant picked up her phone and threw the phone at her, hitting her in the face and causing injury under her eye. Officer Moreland took photos of AV1 with her makeup on, and took a photo after AV1 removed her makeup (Exhibits 1, 2 & 6).

Officer Moreland then spoke with defendant. Post-*Miranda,* Defendant gave Officer Moreland three very different stories. In his first story, defendant told Officer Moreland that nothing happened on April 8, 2026, and that defendant did not know anything about the marks on AV1's face. In the second story, defendant told Officer Moreland that defendant noticed the

mark on AV1's face, but did not know where the mark on her face came from. In defendant's third story, defendant admitted that he moved AV1's phone, but that he did not know what made the mark on her face, and said that AV1 probably dropped the phone on her own face. Defendant admitted that he had been at AV1's property for 2 hours trying to get the keys to his father's house, tools and household items that he said belonged to him. Defendant said that AV1 would not give him the items he wanted.

Officer Moreland took photos of AV1's face and the injuries that he observed when he contacted her (Exhibits 1-6), the Government obtained the three 911 calls made by AV1 on April 11, 2026 (Exhibits 7-9) and Officer Moreland had bodycam video running while he spoke with AV1 and defendant (Exhibit 10).

Should she be in court, then the standards concerning confrontation and admissibility briefed above will either have some application, or perhaps none at all. The status of this witness is unclear to the government at this time, the government has taken steps to communicate with AV1 and serve her with a subpoena.

This court should admit the Bodycam video of her interview by PPB, which will be introduced through the officer that spoke with AV1, for the following reasons:

The bodycam video evidence is very distinguishable from the evidence that was considered inadmissible in *United States v. Comito*, 177 F.3d 1166. In that case, Comito's SRV involved Grade B allegations of the unauthorized use of his former girlfriend's bank cards, credit cards and checks. The crux of the alleged fraud violation was the accusation made by Comito's former girlfriend and roommate to Comito's probation officer that he had used her bank cards, credit cards and checks without her permission. The ex-girlfriend was not present to testify. The government sought to offer the probation officer's testimony regarding the ex-girlfriend's

statements. She had called the probation officer to report these allegations in January 1998, but the conduct had occurred the previous month. 177 F.3d at 1168. Comito strenuously objected to this hearsay testimony to prove the violation and argued it would violate his client's confrontation rights. *Id.* at 1167-68.

*Comito* held that the hearsay statements were vital to finding a violation and that the statements "bore no particular indicia of reliability." *Id.* at 1171.

In this case, the facts are very different. First, the out-of-court statements at issue were made by AV1 after she called police in the immediate aftermath of the incident. She made the statements to a uniformed police officer. It is a misdemeanor crime in Oregon to make a false report to police.[1]

Second, the context of her statements was much different. Police arrived while the incident that AV1 reported to 911 was still ongoing, defendant was still in her driveway. In *Comito* they were historical to a month before.

Third, there was significant corroboration for AV1's statements. Officer Moreland observed a red mark and bruising on AV1's face and took photos of her injuries.

Fourth, the fact that AV1's statements are videotaped and her own statements can be reviewed by the court, rather than the content being introduced through a third party, as in *Comito*, is a distinguishing fact of reliability.

Here, there is sufficient and strong indicia of reliability in this case to support admission of the Bodycam video, the 911 calls and Officer Moreland's account of the incident. The context, corroboration through non-hearsay evidence, and its form, all combine to support admissibility.

[1] Or. Rev. Stat. § 162.375

**CONCLUSION**

For the reasons stated above, the government requests that the Court find Officer Moreland's testimony admissible and that there is sufficient evidence to find by a preponderance of the evidence that defendant violated the terms of his supervised release.

Dated: September 17, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Nicole M. Bockelman*
NICOLE M. BOCKELMAN, OSB #105934
Assistant United States Attorney